

**ORDERED in the Southern District of Florida on June 4, 2025.**



Peter D. Russin, Judge
United States Bankruptcy Court

---

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

IN RE:
RV SALES OF BROWARD, INC.,                Case No.: 24-10741-PDR

Debtor.
_____/

### AMENDED[1] ORDER DENYING MOTION TO DISQUALIFY STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A. AS TRUSTEE'S COUNSEL

Motions to disqualify counsel implicate fundamental concerns that go to the heart of public confidence in the integrity of the judicial process. They deserve close scrutiny—not only because they implicate core ethical rules, but also because they threaten to disrupt the orderly administration of justice and displace parties' chosen

---

[1] The Court amends its prior order to correct a factual misstatement on page 5 regarding the identity of a witness who testified at the evidentiary hearing. The amended finding accurately reflects that it was the Trustee who provided the tracing testimony.

legal representatives. In bankruptcy, when aimed at estate fiduciaries, those concerns are magnified. Trustee's counsel serves the broader interest of the bankruptcy estate, not just a single party. Disqualification, particularly of estate fiduciaries, is a remedy that must rest on more than mere suspicion or the residue of past associations. It must be grounded in facts and law.

Those fundamental concerns extend as well to the duty of candor imposed by Rule 2014 and the foundational expectation that professionals seeking to represent a fiduciary estate will disclose, fully and accurately, all prior connections that may bear on disinterestedness. Disclosures under Rule 2014 are not mere formalities. They are the starting point of the Court's gatekeeping function and essential to maintaining the trust of creditors and the integrity of the process. The burden is on the applicant to get it right—and to do so the first time.

The *Motion to Disqualify Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver") as counsel for the Chapter 7 Trustee*, (the "Motion to Disqualify"),[2] filed by Gigi Stetler, principal of RV Sales of Broward, Inc. (the "Debtor" or "RV Sales"), arises from Stearns Weaver's representation of the Debtor and Ms. Stetler in unrelated litigation more than a decade ago. The attorneys involved in that prior representation have long since departed the firm. The current representation involves different legal and factual issues, and no evidence has been presented to suggest that any confidential information was preserved or used by present counsel. And none of the attorneys currently representing the Trustee were involved in the

---

[2] Doc. No. 362

earlier litigation. On the surface, the Motion to Disqualify raised serious concerns. But to stop there would do a disservice to the Trustee, the estate, and its creditors. The facts do not support disqualification. And the Motion to Disqualify was filed more than six months after the conflict was disclosed, and only after the Trustee began pursuing significant claims against Ms. Stetler—suggesting a tactical motive rather than genuine ethical concern. The Motion to Disqualify must be denied.

## I.      Findings of Fact[3]

The events giving rise to the disqualification motion trace back not only to the Debtor's and Ms. Stetler's decade-old litigation with General Electric Commercial Finance ("GE") but also to the unfolding procedural history in this bankruptcy case. Debtor, RV Sales filed a voluntary petition for Chapter 11 relief on January 26, 2024.[4] Less than five months later, on June 20, 2024, the case was converted to Chapter 7, and Kenneth Welt was appointed as the Chapter 7 Trustee.[5]

Shortly after conversion, on June 24, 2024, the Trustee filed an application to retain Eric Silver of Stearns Weaver as general counsel.[6] Silver has been with the firm since 2010 and has significant experience in bankruptcy and commercial litigation. The application was served on the Debtor and Debtor's counsel, and the

---

[3] The Court reviewed and relied upon the following hearing transcripts in finding facts: Doc. Nos. 351 [Transcript of 11/14/2024 Hearing]; 371 [Transcript of 1/14/2025 Hearing]; 384 [Partial Transcript of 7/1/2024 Hearing]; 386 [Transcript of 2/13/2025 Hearing]; and 406 [Transcript of 3/17/2025 Hearing].

[4] Doc. No. 1

[5] Doc. Nos. 159, 162

[6] Doc. No.  166

Court approved it the following day without a hearing.[7] The Rule 2014 declaration submitted with the application made no reference to any prior representation of Ms. Stetler or RV Sales.

At the initial hearing post-retention, held on July 1, 2024, Silver disclosed on the record that Ms. Stetler had informed him that Stearns Weaver had previously represented her and the Debtor in unrelated litigation. He explained that the engagement occurred before he joined the firm and involved attorneys who had since left. He advised the Court that a supplemental disclosure would be forthcoming. The Court responded by informing Ms. Stetler that she could raise any formal objection if she believed a conflict existed.

On July 22, 2024, Silver filed a Supplemental Declaration acknowledging that more than ten years earlier, the firm had represented Ms. Stetler in the dispute with GE.[8] The matter involved a replevin action through which GE seized RV Sales' entire inventory, including consigned units. Stearns Weaver, through attorneys Bonnie Navin and Paul Regensdorf, represented the Debtor and Ms. Stetler in that litigation and an ensuing arbitration concerning title issues and enforcement of an alleged settlement agreement. Silver disclosed that both Navin and Regensdorf had long since left the firm and that no current attorneys had participated in or had access to those prior engagements. He concluded that the earlier representation did not impair the firm's disinterestedness.

---

[7] Doc. No. 167
[8] Doc. No. 213

Meanwhile, the Chapter 7 Trustee began pressing forward with estate administration. On July 3, 2024, the Court granted the Trustee's Motion to Compel Turnover, which directed the Debtor—through Ms. Stetler—to surrender certain vehicles, financial records, and access credentials.[9] But by October 2024, the Trustee alleged that compliance had not been forthcoming. On October 16, 2024, the Trustee filed a Motion for Order to Show Cause, asserting that Ms. Stetler had violated turnover obligations by withholding records, failing to account for asset sale proceeds, and diverting postpetition funds to accounts not controlled by the Debtor.[10]

At a preliminary hearing on November 14, 2024, the Trustee proffered evidence that proceeds from multiple postpetition RV sales had not been deposited into estate accounts. Ms. Stetler maintained that the transactions involved consigned units and that the funds had been properly handled through third-party entities.

The Court granted the show cause motion and set an evidentiary hearing for January 14, 2025.[11] At that hearing, the Trustee testified that he had traced more than $500,000 in postpetition proceeds from the sale of RVs in which the Debtor had an interest, deposited into non-debtor accounts controlled by Ms. Stetler.

On cross-examination, Ms. Stetler testified that these transactions followed a business structure created years earlier based on legal advice she received—including from Stearns Weaver—during the GE litigation. She testified that the firm had

---

[9] Doc. No. 174

[10] Doc. No. 319

[11] Doc. No.  340

advised her to route consignment proceeds through a separate entity—Broward RV Rentals—which had remained her practice. "The exact same situation that happened in the GE case is what you're doing to me right now," she testified, drawing a direct comparison between GE's seizure of inventory in 2008 and the Trustee's current claims.

Two days after that evidentiary hearing, on January 16, 2025—more than six months after the supplemental disclosure—Ms. Stetler filed the Motion to Disqualify. She argued that the firm had acquired confidential information about her business structure and financial practices in connection with the GE litigation and was now using that information against her.

At a subsequent hearing on February 13, 2025, she reiterated these concerns. She described the corporate separation between RV Sales and Broward RV Rentals as one that had been advised by Stearns Weaver. She argued that the Trustee's legal theory—that she had improperly diverted estate proceeds—relied on confidential insights originally shared with the firm more than a decade ago. She offered no specific documents to support this assertion but claimed that she had voiced her concerns about a conflict both formally and informally from the outset, including communications with the U.S. Trustee. She further alleged that Mr. Silver had misrepresented material facts to the Court and that the firm's failure to disclose its prior relationship in the original Rule 2014 disclosure—despite eventually correcting it—had irreparably compromised her ability to defend herself.

Accordingly, the Court set an evidentiary hearing on the Motion to Disqualify for March 17, 2025.[12] At that hearing, the Court heard testimony from five witnesses: Gigi Stetler; Bonnie Navin, a former Stearns Weaver partner; Bradford Swing, General Counsel of Stearns Weaver; attorney Eric Silver; and Maria Christlieb-Cook.[13]

The testimony presented at the March 17, 2025 evidentiary hearing revealed a complex history dating back to 2008, when GE initiated the replevin action against RV Sales. GE asserted a floorplan lien and seized all of the company's RV inventory—including consigned units—under a blanket UCC-1. In response, Ms. Stetler and RV Sales, retained Stearns Weaver to defend them in the ensuing litigation and arbitration. Attorneys Bonnie Navin and Paul Regensdorf led that representation.

Bonnie Navin was a former partner at Stearns Weaver and a Florida attorney with extensive litigation experience. She remained at the firm until approximately 2012. She described Stearns Weaver as a large, departmentalized firm and explained that its conflicts checks were centralized. Ethical screens were typically applied to staff, not attorneys, and there was no suggestion she had access to any current firm matters.

---

[12] Doc. No. 381

[13] Ms. Christlieb-Cook provided no useful information that was not redundant. Ejola Maria Christlieb-Cook, a former Stearns Weaver paralegal, testified that she had no personal involvement in any matter relating to Ms. Stetler or RV Sales. She did not handle, review, or prepare legal files for those clients and had no knowledge of any confidential information disclosed during the firm's representation. She testified that the firm had a centralized conflict-checking process during her tenure but had no role in conflicts screening specific to RV Sales. On cross-examination, she confirmed that her understanding of any conflicts related to Ms. Stetler was based entirely on her general experience, not firsthand involvement. She also had no knowledge of whether any confidential materials were retained at the firm or accessed by current attorneys.

Navin testified that during the GE litigation, she and Regensdorf worked closely with Ms. Stetler and, according to the testimony, offered restructuring advice to prevent similar future seizures of consigned third-party property. Ms. Stetler testified that Navin and Regensdorf recommended forming a separate consignment entity, using distinct bank accounts, and keeping RV Sales operational but isolated from consigned property. She recalled that this advice was discussed during a meeting in Stearns Weaver's office, and that handwritten notes were taken. Navin confirmed that she took the notes and gave them to Regensdorf, although she could not confirm they were ever scanned or retained in the firm's systems.

Ms. Stetler had previously incorporated Broward RV Rentals in September 2008 and adopted the proposed consignment structure using that entity. She testified that she continued to operate under that structure for years, including during and after the bankruptcy proceedings, and believed the Trustee's current legal strategy—targeting the flow of funds through non-debtor accounts—was adverse to advice Stearns Weaver had once given her.

Navin testified that no separate legal file was ever opened for the restructuring advice, nor was she involved in formalizing any plan. Upon learning the firm was representing the Trustee, Navin advised Ms. Stetler to raise the issue with the firm's leadership, believing based on her memory of prior communications that such representation was problematic.

Eric Silver testified that he was unaware of the firm's prior representation of Ms. Stetler or RV Sales until just before the July 1, 2024 hearing, when Ms. Stetler

personally informed him. He immediately disclosed the issue on the record and filed a supplemental Rule 2014 disclosure three weeks later. Silver admitted that he had signed the original Rule 2014 declaration relying entirely on the firm's internal conflict-check system. He acknowledged that this was a mistake. Later, in opposing the disqualification motion, the firm erroneously stated that no prior records existed—a second misstatement that Silver acknowledged, explaining he had not personally reviewed the firm's document management system or verified the statement with IT or General Counsel before making it. Silver emphasized that he had no involvement in the prior representation, had never accessed any historical records, and based all of his litigation strategy on postpetition discovery, bank records, forensic accounting and consultations with the Trustee.

To determine whether a conflict existed, Bradford Swing, Stearns Weaver's General Counsel for more than twenty years, undertook an exhaustive review. He began by analyzing the ethics rules under Florida Rules 4-1.9 and 4-1.10, concluding that the matters were neither the same nor substantially related and that no confidential information remained accessible to current firm personnel. Swing personally examined all documents tied to the four prior litigation matters involving Ms. Stetler and RV Sales. He read every record in the document management system, reviewed more than 3,200 emails, and examined time entries and billing records. He found no documents referencing corporate structuring advice, consignment arrangements, or any matter number associated with corporate or restructuring

work. Swing also searched for handwritten notes, memoranda, or scanned documents consistent with the meeting Navin recalled but found nothing.

He testified that all paper documents are supposed to be scanned into Stearns Weaver's document management system which is designed to retain digital records indefinitely. Any paper materials once scanned are destroyed. Swing testified that there was some indication in letters in the record that certain boxes of documents had been removed when Navin and Regensdorf departed, and that they did not follow standard exit protocols which might explain the absence from the document management system of the alleged handwritten meeting notes. No firewall was instituted for Silver or other current attorneys because none had participated in the earlier representation or had access to such records. Swing concluded that there was no ethical bar to the firm's continued representation of the Trustee.

Although Ms. Stetler testified that the current litigation strategy mirrored GE's prior approach, she acknowledged that she had not reviewed the firm's records, had not requested her file,[14] and had not submitted any documentation or communications to support her claim that confidential information had been retained or misused. She alleged the existence of thousands of emails but had not located or submitted any. Her testimony, while sincere, lacked corroborating evidence. Navin's

---

[14] Ms. Stetler asserted that she did not formally request her client file from Stearns Weaver because Mr. Silver had said no such files existed. However, Mr. Swing testified that he conducted a comprehensive review of all archival materials, including over 3,200 emails, and located no restructuring notes or other confidential records. He concluded such materials were never uploaded into the firm's system. Mr. Silver separately testified that he never accessed any legacy records and relied exclusively on third-party discovery and postpetition information. On this record, there is no basis to infer misuse of confidential information or that a formal file request would have altered the outcome.

concerns, similarly, were based on general assumptions rather than firsthand knowledge about the firm's record retention or access practices.

The testimony of Swing and Silver was detailed and consistent with the absence of any ongoing conflict. Swing's comprehensive review left no reasonable basis to believe that confidential information remained at issue or was used in the Trustee's case. The record reflected a complete turnover in personnel, no continuity of files, and no evidence that the prior litigation—focused on a secured creditor's enforcement of a floorplan lien—was substantially related to the Trustee's current pursuit of postpetition estate recovery.

## II.    Conclusions of Law

The law governing the disqualification of trustee's counsel in bankruptcy cases is rooted in both statute and ethical principle. Section 327(a) of the Bankruptcy Code permits a trustee to employ attorneys who are disinterested persons and who do not hold or represent an interest adverse to the estate. That phrase—"disinterested person"—is further defined by § 101(14), and the Eleventh Circuit has made clear that the inquiry turns on whether counsel has a conflicting incentive or allegiance that would impair the faithful execution of estate duties.[15]

But federal bankruptcy law does not operate in isolation. It draws meaning and standards from the broader ethical rules that govern the legal profession. In Florida, that framework includes Rule of Professional Conduct 4-1.9, which bars a lawyer from representing a new client in the same or a substantially related matter

---

[15] See *In re Prince*, 40 F.3d 356, 361 (11th Cir. 1994).

where the interests of the new client are materially adverse to those of a former client, unless informed consent is given in writing. Comment 3 to the ABA Model Rule offers further guidance: matters are "substantially related" when they involve the same transaction or legal dispute, or when there is a substantial risk that confidential information obtained in the prior representation would materially advance the position of the new client in the subsequent matter.

Here, the Court is persuaded that the two matters—the GE litigation a decade ago and the Trustee's current efforts in this Chapter 7 case—are not substantially related. The former involved GE's exercise of rights under a floorplan financing agreement and a replevin action targeting RV Sales' entire inventory. It was a prepetition secured creditor enforcement action resolved through arbitration and litigation. The present case, by contrast, centers on postpetition conduct—specifically, the alleged diversion of RV sale proceeds and the Debtor's compliance with turnover obligations under the Bankruptcy Code. The factual record supporting the Trustee's claims stems from post-conversion discovery and forensic analysis of recent bank records and estate property.

That the Debtor's business structure—particularly the relationship between RV Sales and Broward RV Rentals—is implicated in both contexts does not, by itself, make the matters substantially related. Similar themes or repeated factual patterns do not equate to identity of subject matter. The question is not whether the Trustee's arguments resemble those made by GE but whether confidential information

acquired during the firm's prior engagement with Ms. Stetler is now being used to her detriment. The Court finds that it is not.

This conclusion is not drawn lightly. Ms. Stetler believes with evident sincerity that Stearns Weaver's past advice is now being used against her. But belief is not enough. The burden lies with the movant to demonstrate that counsel has breached a duty or that the integrity of the process is compromised. That burden was not met here.

There is no evidence—none—that any attorney now working on behalf of the Trustee accessed confidential materials from the earlier representation. Eric Silver credibly testified that he had no involvement in the GE litigation, that he did not review the firm's historical files, and that his understanding of the Debtor's corporate structure came solely from current litigation discovery. He also candidly acknowledged the firm's initial missteps in its Rule 2014 disclosure. He admitted he signed the declaration without verifying it and that the firm's subsequent claim that no records existed was made without his own review of the document management system or consultation with IT or the General Counsel. These were errors. But they were errors of oversight, not of concealment or bad faith.

Bradford Swing, the firm's General Counsel for over two decades, conducted a search that can only be described as methodical and comprehensive. He reviewed every document in the firm's digital archives relating to Ms. Stetler or RV Sales. He examined over 3,200 emails, read through every entry in the firm's document management system tied to the four legacy litigation files, reviewed time records and

billing descriptions, and looked for any matter number or file type that would indicate non-litigation advice. He found no trace—no note, no memo, no email—documenting restructuring advice. No scanned handwritten notes. No advice on consignment practices. No firewall was required, because there was nothing to wall off.

Swing further testified that the firm's document protocols would have retained any scanned materials or digital communications. If any physical records ever existed and remained, they likely left the building with Navin or Regensdorf years ago. His testimony was steady, credible, and entirely consistent with a firm acting in good faith.

Ms. Stetler offered no contrary documentation. She claimed that emails existed but produced none. She did not request her file, but in any event, did not identify a single document she believed had been used against her, at least some of which she would theoretically have in her possession as the former client. Navin, for her part, recalled the strategic advice but conceded she had no idea whether any records remained at the firm or whether anyone had accessed them. Her concerns were based on firm practice, not personal knowledge.

Even assuming, for argument's sake, that confidential information was once shared those many years ago, the imputation rules of Florida Rule 4-1.10(c) would not disqualify the firm. That rule requires a showing that a current attorney possesses material confidential information. Here, no such showing was made.

Disqualification is not a remedy to be imposed lightly. It disrupts estate administration, delays proceedings, and deprives the Trustee—and by extension, the

creditors—of chosen counsel who has developed familiarity with the case. For disqualification to be warranted, the record must show more than discomfort, more than generalized concern. It must show ethical compromise or the real risk of misuse of information. That showing is absent.

The delay in raising the motion only reinforces this result. Ms. Stetler was aware of the firm's prior role by July 1, 2024, yet waited until January 16, 2025—more than six months later—to file the Motion to Disqualify. During that time, she engaged in contested matters and did not move promptly to raise the issue. Courts in this circuit have routinely found that such delay undermines the legitimacy of the concern and points toward tactical motivation.[16]

The Court does not excuse the lapse in Stearns Weaver's original Rule 2014 disclosure. It was a failure that should not have occurred. Rule 2014 is not a box to check—it is a gatekeeping mechanism designed to preserve the Court's confidence in those who serve the estate. But the firm corrected the record, and it did so before any prejudice occurred. The Court reserves for another day the question of whether this misstep affects compensation. That question is not before the Court today.

What is before the Court is whether disqualification is required. On this record, the answer is no. There is no substantial relationship, no evidence of retained or accessed confidential information, and no indication that any current attorney possessed knowledge of the prior engagement. What remains is a firm that made errors, took responsibility, and conducted a credible internal review.

---

[16] See *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir. 1988).

That is not a record that compels disqualification. It is a record that counsels against it.

Stearns Weaver satisfies the requirements of § 327(a) and is a disinterested person under § 101(14). The record does not establish a substantial relationship with the prior matter under Rule 4-1.9 or demonstrate the use or risk of misuse of confidential information. The motion raised legitimate questions, but the evidentiary record tells a different story—one of separation and independent discovery. Disqualification under these circumstances is not appropriate.

## III.    Conclusion

The Motion to Disqualify Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. is **DENIED**.